Good morning, Your Honors. May it please the Court, this is Judith Wood on behalf of Durag Sipanian. I think that the issue in this case is not actually whether the respondent told the truth or not. In his immigration hearing, which happened, his immigration hearing started in the year of 2002, exactly on April 19, 2002, and was continued several times. The first time he was notified that there might be a frivolous finding was on September 29, 2010. That was eight and a half years, eight and a quarter years after this case started. And the case, this decision was made very shortly after that admonition was given to the respondent. In fact, it wasn't really an admonition. What happened was the case went on and on for years, and then toward the end of the process, the trial attorney did discover more evidence and came to court with it, at which point there was a lot of testimony trying to explain the discrepancy in the application and the respondent's testimony. However, the warning regarding frivolous finding was not given to the respondent at the beginning in 2002, and not given in any of the subsequent hearings. There was a hearing on May 3, 2010, August 13, 2000. I thought our opinion in this case that he was given appropriate notice. Well, very late in the game, Your Honor. He was not given any kind of notice about frivolous, and his asylum application was filed, actually, in 2001. And that asylum application did not have the warning regarding frivolousness on it, as later I-589s do have. So, he was not apprised of the consequences. Our opinion as far as the case, it says part of the framework was sufficiently complied. But that is, he did have sufficient notice and was given an ample opportunity to explain discrepancies in his testimony. But he tried to explain the discrepancies. Apparently, the immigration judge did not accept his explanation. It's a complicated situation where he has, actually, sort of two lives, two sets of parents. One set of parents lived in Iran. The other lived in Armenia. And then one set of parents actually moved to Glendale, California. And it's very complicated. Who were the parents? Who were the sisters and brothers? It became all very convoluted during the course of this eight-year testimony. However, the point is that he was not apprised of the fact that the judge was considering a frivolous finding until the very end. And so, he really didn't have time to prepare for the consequences of a frivolous finding, which are pretty onerous. I mean, this person has lived in this country for more than 20 years. He has a U.S. citizen wife and a U.S. citizen child. His parents apparently are residents of the United States. The consequences of a frivolous finding mean that he can't get any relief under the act. And, moreover, if it is true, if it is true that he was born in Iran and he is a practicing Christian, he would likely be subject to severe treatment in Iran and perhaps be tortured in Iran. And, therefore, the consequences, both the consequences of a frivolous finding and the consequences of removal, perhaps, to Iran are very severe for this person. And, that's why we think that he wasn't really apprised of the consequences of a frivolous finding. You have a case that says what you're saying here, that he must be apprised of that potential frivolous finding. Yes, Your Honor. The main case is Kodka and also YL. Kodka is the main case in this situation because they distinguish between someone not being credible and someone who purposely with an intent to defraud the courts admits an application which is fraudulent. I didn't get your response to my question. As when we held in Stepani and won, that that portion of the Kodka framework was complied with. He did have sufficient notice and was given ample opportunity to explain discrepancies in his testimony. So, we're bound by that as the law of the case. Please explain why we're not bound by that. When you cite the law of the case, Your Honor, I recently litigated a case regarding law of the case. And, it was also a person who claimed to be from Iran, the matter of Etemadi. But, that person became a Christian.  And so, the court remanded finally upon after the law of the case was litigated on a motion for rehearing. That case got remanded for that person to be. And, he was found also. He was found frivolous. Etemadi was found frivolous. However, he was able to persuade the court to remand the case to the immigration court based on the fact that he had converted to Christianity in Iran. In this case, the respondent has not converted to Christianity. He grew up as a Christian, allegedly in Iran, practiced Christianity in Iran, and allegedly was imprisoned in Iran. However, there are very confusing facts in this case. Because, in this case, he has two sets of parents. Two in Iran, a mother and father in Iran and a mother and father in Armenia. The people have raised him. His relatives have raised him. His father and mother allegedly gave the respondent to the father's brother, who did not have a male child. And, therefore, the respondent grew up under the supervision of his uncle, whom he regarded as his father,  because the respondent referred to his uncle as being his father and referred to his cousins as being his brothers and sisters. And, it all became extremely confusing during the eight years of testimony in this case. And, it was only at the very end of that confusion that the trial attorney, at this time she's an immigration judge, but at the time the trial attorney came in with more information regarding his application for an immigrant visa from Armenia. And, she came to the courtroom with an Armenian passport, which is another fact that needs to be resolved. Was he an Armenian citizen or was he an Iranian citizen? The respondent alleges that he was an Iranian citizen and that goes to the heart of the matter. Did he intend or did he simply make a mistake in his rambling through his eight years of testimony? Did he intend to defraud the court? It's a question of intent, which the immigration judge, a partner man, did not actually address. She simply repeated the decision of the original immigration judge. And, that's why we appealed again from the BIA because the BIA affirmed the decision of the immigration judge, who didn't take one word of testimony, not a syllable of testimony, upon remand. Mr. Wood, let me ask you a question. I seem to see a direct conflict between your client's claim that he was born and lived in Iran and his 2001 application for a non-resident visa in the United States that said he was born in Armenia and lived in Armenia. Yes, Your Honor, that is true. There is a direct conflict in that. Well, isn't that sufficient basis to find that he made a frivolous claim? Not necessarily. The respondent testified that his relatives procured the Armenian passport to effectuate his being able to leave, eventually leave Iran and travel through Europe and eventually come to the United States. I'm not concerned with the Armenian passport. I'm concerned with his application for a non-resident visa to the United States. He claims he was born in Armenia and he resided in Armenia. And on the other hand, now he claims he was born in Iran and resided in Iran. Those two facts are so contradictory as to give sufficient evidence that this was a frivolous claim. I understand your concern, Your Honor, and I am also concerned about it. However, the respondent did testify during the course of the eight years of testimony and hearings that he did not apply for that Armenian passport, that in fact his relatives did. And so he did not have an intent to defraud the court. The issue is intent to defraud the court. Keep going back to the application for the Armenian passport. Put that to one side. Throw the passport out the door. What I want to know is did he apply for the American USA non-resident visa? Or did his parents in Iran apply for that? He testified that his parents did that, Your Honor, that he did not. During the course of the hearing, he testified that he himself did not apply for that. For the USA visa, correct? That is correct, Your Honor. Do you have a citation of the record on that? Yes, Your Honor. If you'll give me a moment, I'll give you the... I need a moment to find it in the CAR, Your Honor. Well, perhaps you can come back with your rebuttal and give me that. Okay. How old was he when he filed this application in 2001? He was an adult, Your Honor. The application, the original I-589 was filed in 2001, and... So it was not as if his parents did it as their son, but he was an adult, right? He was an adult when this was filed. Okay, that's all right. As a former immigrant who has applied for a non-resident visa, I can't imagine how it can be done without the person applying for it himself. You're telling me the relatives applied for it. I remember going to the embassy in Madrid and applying for it myself, not through some relatives. I'm sure you did it correctly, Your Honor, but apparently Mr. Durastakhanian did not and had his relatives to afford it. I save my time for rebuttal, Your Honor. All right, we'll hear from the government. Good morning, Your Honors. May it please the Court, Neha Kamani for the respondent. It's interesting that petitioner begins their case with, this is not a matter of whether or not Mr. Stepanian lied. That is, in fact, the primary issue in this case. As Judge Ikuda pointed out, the prior remand was a very narrow remand. It had noted that Mr. Stepanian received proper notice and that he had ample opportunity to resolve the inconsistencies, to address them. So that part of the framework, that part of the matter, YL framework for a frivolous finding was not at stake in this case. That had already been determined. And so on remand, the agency was required to determine whether or not Mr. Stepanian deliberately fabricated a material element of his claim and whether he knowingly filed a frivolous application. And the record shows that he did. He fabricated his home country, his country of nationality, which is undeniably a material element that must be approved to establish asylum eligibility. Here, the record shows that he deliberately fabricated Iran as his home country because he did not have a claim for persecution, religious persecution in Armenia, based on Christianity, where the majority of the people there practiced that religion. The burden was on DHS. Just show that he filed a frivolous application and they met their burden. They submitted a forensic examination of the birth certificate that Mr. Stepanian submitted, showing it to be a counterfeit. Why does that matter? There doesn't seem to be any dispute that he was born in Iran. Why does it matter whether the birth certificate was fabricated or not? Yes, Judge Aikuda. Material element is an element that's required to be proven to establish the claim. And him submitting this counterfeit birth certificate was the building blocks to him establishing that my home country is Iran. He went to that material element. Yes, Your Honor. He could be a resident of Iran, but not born in Iran, correct? And still be persecuted for his Christian beliefs.  And in fact, it shows quite the opposite. That his family and he were residents of Armenia for the last 30 years, before they came to this country. Did he have a driver's license from Iran and a high school certificate from Iran? Yes, he did. Those documents were not authenticated. Moreover, the affidavit or letter he submitted by his uncle, the man that he claims to be his non-biological father, the one that supposedly raised him in Iran, that letter from that uncle provided no specifics whatsoever. It simply stated that Stepanian lived with him for some time without any dates, without any details on his upbringing, his education, his alleged persecution. Similarly, the friend that testified on Mr. Stepanian's behalf stated that she met Mr. Stepanian in Iran in May 1999, a few times during that month when she was there visiting her grandparents. But she, too, provided no information on his background, on him having supposedly lived there, his alleged persecution. The three documents that were introduced into evidence, I think it was a driver's license, a summons, and a high school diploma, the government is now saying those weren't authenticated, but they didn't raise that objection during the hearing, right? Did they forfeit that argument? Your Honor, there was enough other information that showed that Mr. Stepanian was not a national or a resident of Iran. Those documents were... Mr. Stepanian, in fact, could have had those documents authenticated to corroborate his case, to help him prove that, yes, I am, in fact, a national of Iran, that is my home country, but he didn't take those steps. He also, when given the opportunity to address this evidence multiple times, both before in the original proceedings and then again on remand, he doesn't undermine DHS's evidence. In fact, even now, Petitioner's counsel is trying to change gears by making it about notice, and the record clearly shows that sufficient notice was given to Petitioner here, and he was given ample opportunity to address it, and so it does matter that he lied, and his consistently inconsistent testimony supports that fact, too. He couldn't provide consistent testimony on how he obtained the counterfeit birth certificate. He couldn't provide consistent testimony on his parents' whereabouts. So, in fact, he testified as late as the 2009 hearing that his wife was living with his parents in Iran, when in fact his parents were already in this country, as well as some of his siblings. He also, his claim that he confused his biological parents with his uncle and aunt also is not supported by the record where he named his biological parents in both his testimony and application whenever asked to detail his parents. So if this all goes to the adverse credibility determination which we upheld, how does it show that he deliberately manufactured aspects of his silent application? Yes, Your Honor. It shows home country, as the statute and regulations clearly make out, is an essential element. It is a material element. As the I.J. put it in her decision, it's the structure of the relief. It's the basis for relief. And so his lie, his fabrication of his home country, is not merely an inconsistent factor that shows him to be not credible. Rather, it goes to the heart of his claim itself, without which relief cannot be granted. So it's much more than an adverse credibility determination. And while his case is a pre-real ID case, post-real ID adverse credibility cases don't even need the inconsistency to go to the heart of the claim. Here, it's very much the heart. It's not even a factor relating to the heart. It is the heart. It is the material element of his claim, without which he doesn't have a basis. He doesn't have a basis. There's some evidence that shows that there were discrepancies in the asylum application, like that the age of birth, that he was fluent in Farsi, that he didn't have his high school. There was the non-immigrant visa application, which had a completely different story. Those all undercut his asylum application. But there was also evidence supporting the asylum application. There were the declarations from the uncle, the friends, the parents. And there were the three items of documentary evidence, the diploma, the summons, and the driver's license. So the DHS's obligation is to prove by preponderance of the evidence, more than 50%, that the asylum application is fabricated. How do you carry your burden by preponderance, given that there's evidence on both sides? This case isn't like CADCA, where in that case the court found that the record was replete with other documentary evidence that supported the petitioner's claim in that case. In this case, in fact, it's actually the opposite. I do not recall there being affidavits from the parents, Your Honor, supporting his claim. As for the affidavit or the letter from the uncle, as I stated before, it was wholly vague. There was nothing about when he lived in Iran, his upbringing. He didn't support those other documents that you refer to, the driver's license, the high school diploma, the prosecutor's summons. None of those items were in the uncle's letter. And in addition, as I stated before, they were not authenticated. So we're looking only to Mr. Stepien's testimony on those documents. And his testimony was found to be wholly inconsistent. Every time an inconsistency was pointed out to him, he failed to resolve it. Whereas DHS's concrete evidence shows that Mr. Stepien lied on his asylum application. Pardon me, may I ask a question? As to the summons from the Iranian Ministry of Justice, which was reportedly served on him in March of 2001, one month before he allegedly fled the United States, how would you propose that Mr. Stepien go about authenticating that? Asylum applicants do it all the time. There are facilities that could authenticate it. Even if he could not utilize one of those, he could have had his uncle corroborate it with an affidavit. He could have had any friends or colleagues supposedly in Iran corroborate it. His parents who live here did not testify or write letters on his behalf. There is nothing in the record other than Mr. Stepien's testimony found to be incredible to support it. There's nothing else. No other corroboration. So the government is taking the position that had he had his uncle in Iran say that the summons from the Ministry of Justice in Iran was authentic, that would be sufficient without an apostille? Not necessarily, Your Honor. I think that's for the fact finder. That's for the immigration judge to determine on the basis of the record as a whole whether it would be sufficient or not. It would have to be based on Mr. Stepien's testimony as well. When there's so many other inconsistencies, the immigration judge does not have to accept an affidavit as true if everything else points to it as not being true. But here, he didn't even take those steps. Mr. Stepien did not take those steps. The government proved, or at least got some testimony that the birth certificate was a fraud, was a counterfeit. Did the government attempt to find whether the Iranian summons was counterfeit? Your Honor, from the record, my understanding of the record, it does not appear that those documents were also sent to the forensic laboratory. Thank you. In all, the record clearly supports the agency's frivolous finding here, where the agency followed the framework outlined in Matter of While, the reason why this case was remanded. Mr. Stepien failed to provide persuasive explanations, even though given ample opportunity to do so both prior to this court's remand and then thereafter again. The agency provided specific and cogent reasons for its frivolous finding. And the record shows that he was provided with due process throughout. As for Ms. Wood's argument that the case or the hearings took place over eight years, that's not an excuse for inconsistent testimony. Simply because hearings take place over a long period of time, most asylum hearings do, in fact. It does not mean that inconsistency should be excused, especially when there are the number that are present in this case. So for all those reasons, respondent requests that this court uphold the agency's determination and deny the petition for reveal. Thank you. Thank you, Your Honors. Thank you. You have a few minutes for reveal. Yes, Your Honor. Your Honor, you directed me to look at the transcript, I mean the CAR, regarding the Armenian pass, the application for a visa in Armenia. And I direct your attention to the CAR, page 506, where the lawyer in court said, referring to the application, to item number six on the application for the visa, item number six says nationality. And it was admitted that he is an Armenian national insofar as he's ethnically Armenian, but it doesn't say anything about Armenian citizenship. And therefore, the judge actually sustained the objection. Nevertheless, he actually didn't come to the United States using that passport, the Armenian passport. He came through the Mexican border, Your Honor. So anyway, in conclusion, the onerous effects of a frivolous finding would deprive this person of his ability to live with his wife, to live with his son, who are both U.S. citizens, and would subject him to possible torture in Iran if, in fact, he was born in Iran. And therefore, I submit that he was not given the opportunity to discuss his case with the immigration judge or crime remand. Thank you. All right. The case of Stepanian v. Garland is submitted again. We're adjourned for this session.  All rise. This court for this session stands adjourned.
judges: Siler, BEA, IKUTA